1

2

3

4

5 UNITED STATES DISTRICT COURT

6 EASTERN DISTRICT OF WASHINGTON

7 GARY HIGLEY, an individual,

8                         Plaintiff,     NO. 2:15-CV-0260-TOR

9         v.                             ORDER DENYING DEFENDANT'S
                                         MOTION FOR SUMMARY
                                         JUDGMENT
10 TULSA DENTAL PRODUCTS, LLC,
   a Delaware limited liability
11 corporation,

12                         Defendant.

13        BEFORE THE COURT is Defendant's Motion for Summary Judgment.

14 ECF No. 25. Also before the Court is Plaintiff's Motion to Strike & Notice of

15 Intent to Dismiss Disability Discrimination Claim. ECF No. 35. The Court has

16 reviewed the record and files herein, and is fully informed. These matters were

17 heard without oral argument, the Court determined pursuant to LR 7.1(h)(3)(B)(iv)

18 that oral argument is not warranted. The hearing scheduled for February 15, 2018

19 is **cancelled**. For the reasons discussed below, Defendant's Motion for Summary

20 Judgment (ECF No. 25) is **DENIED**.

**BACKGROUND**

Plaintiff Gary Higley commenced this action against Defendant Tulsa Dental Products LLC ("TDP") for age discrimination in violation of the Washington Law against Discrimination ("WLAD") RCW § 49.44.090 and § 49.60.180, and disability discrimination in violation of RCW § 49.60.180.  ECF No. 3 at ¶¶ 4–5. Defendant moves for summary judgment on all claims.  ECF No. 25.  Plaintiff filed a Notice of Intent to Dismiss Disability Claim, and thus the Court will only consider Plaintiff's age discrimination claim.  ECF No. 35.

**FACTS**

The following are the undisputed facts unless otherwise noted.  In 2002, Mr. Higley was hired by TDP as an Outside Sales Manager at the age of 58.  ECF Nos. 26 at ¶ 1; 29 at ¶¶ 1, 3.  Mr. Higley was interviewed by Steve Andregg and Joe Wright, but the parties dispute who made the final hiring decision.  ECF Nos. 26 at ¶ 2; 29 at ¶ 2.  In 2004, Mr. Higley was promoted to Senior Outside Territory Manager and his supervisor was Joe Wright.  ECF No. 29 at ¶¶ 5–6.  In 2007, he was promoted to Executive Territory manager at age 63.  ECF Nos. 26 at ¶ 3; 29 at ¶ 7; 26-1 at 107 (Ex. E).  Mr. Higley was supervised by Vanessa Bourgeois and then by Stewart Walline in late 2010 or early 2011.  ECF Nos. 26 at ¶ 4; 29 at ¶¶ 8, 17.  Mr. Andregg was Ms. Bourgeois' supervisor and TDP's West Area Sales Manager.  ECF Nos. 26 at ¶¶ 4–5; 29 at ¶ 13.  Defendant asserts that Mr. Higley

could not have been promoted without Mr. Andregg's approval and Mr. Higley

agreed that he believed Mr. Andregg had to approve his second promotion. ECF

Nos. 26 at ¶ 6; 29 at ¶ 11.

Mr. Higley's responsibilities as an Executive Territory Manager were

"account management, business development and achieving quota." ECF Nos. 26

at ¶ 7; 26-1 at 109 (Ex. F). Key Performance Indicators ("KPIs") are the required

number of sales calls each day. ECF No. 25 at 2. In 2011 and 2012, each

salesperson had a target of eight KPIs per day. ECF Nos. 26 at ¶ 26; 29 at ¶ 21.

The amount was increased to ten KPIs in 2013. ECF No. 26 at ¶ 27. In 2008, Mr.

Higley failed to meet his yearly quota. *Id.* at ¶ 31. Mr. Higley made his quota in

2009 and improved his KPIs, but did not meet his quota in 2010. ECF Nos. 26 at

¶¶ 34–35, 39; 29 at ¶ 19.

In November 2011, Mr. Walline issued Mr. Higley a written notice stating

that his job performance required immediate improvement. ECF Nos. 26 at ¶ 41;

29 at ¶ 26; 26-1 at 157 (Ex. Q). Mr. Higley asserts that in December 2011, Mr.

Walline emailed Debbie Yoder, an employee at TDP's Human Resources,

regarding Mr. Higley's health issues and whether these ailments "would prevent

Gary from being let go due to his performance issues?" ECF Nos. 29 at ¶ 28; 27 at

141–42 (Ex. G). Ms. Yoder does not recall if she followed the normal course of

action by looking into his performance, requesting information regarding his

performance, or requesting information regarding past disciplinary action. ECF
Nos. 29 at ¶ 29; 25 at 104–05 (Ex. C); 31-3 at ¶ 3.

At the end of 2011, Mr. Higley did not meet his sales quota. ECF No. 26 at
¶ 43. In January 2012, Mr. Higley was put on a Developmental Action Plan
("DAP") focused on new products sales and was issued a final written notice. ECF
Nos. 26 at ¶ 46; 29 at ¶ 34; 26-1 at 168–70 (Ex. T). Mr. Higley asserts that he
exceeded his quota in January, February, March, and April 2012. ECF No. 29 at ¶
51. Defendant notes that in February 2012, TDP revised Mr. Higley's DAP to
reflect a reduced expectation of selling eight specified products per month rather
than ten. ECF No. 26 at ¶¶ 46, 50; 26-1 at 112–13 (Ex. G).

Defendant contends that in March 2012, Mr. Higley had multiple KPI entries
for the same customer, but this should only count as one KPI. ECF Nos. 26 at ¶¶
52–53.; 26-1 at 182 (Ex. W). Mr. Andregg recommended termination at this time.
ECF No. 26-1 at 182 (Ex. W). On April 4, 2012, Mr. Andregg and Ms. Yoder had
a call with Mr. Higley to discuss that he was not meeting the company's
expectations. ECF Nos. 26 at ¶¶ 59–60; 26-1 at 190–92 (Ex. Y).

In May 2012, Matthew Burns became Mr. Higley's supervisor at the age of
33. ECF Nos. 26 at ¶ 62; 29 at ¶¶ 44, 46. Mr. Burns kept Mr. Higley on the DAP.
ECF Nos. 26 at ¶ 63; 29 at ¶ 66. While Defendant agrees that Mr. Higley was

exceeding quota, Defendant contends that he was failing to meet new product sales expectations and was not hitting his KPI target. ECF No. 26 at ¶ 63.

Since December 2011, Mr. Higley suffered back pain. ECF No. 29 at ¶ 67. From July 31, 2012 to September 4, 2012, Mr. Higley was on FMLA leave for back surgery. ECF Nos. 26 at ¶ 69; 29 at ¶¶ 68–70; 26-1 at 213 (Ex. DD). Upon his return, he had a lifting and carrying restriction of 25 pounds. ECF Nos. 26 at ¶ 70; 29 at ¶ 76; 26-1 at 216 (Ex. EE). Mr. Higley alleges that he requested a reduction in KPIs because he had to break down his materials for visits to his clients so that he would be able to carry them, meaning he was making less calls per day. ECF No. 29 at ¶ 79. Mr. Higley asserts that Mr. Burns denied his request. *Id.* at ¶¶ 80–81.

In January 2013, Mr. Burns issued Mr. Higley a Second Final Written Counseling, outlining Mr. Higley's deficient performance. ECF Nos. 26 at ¶ 81; 29 at ¶ 99; 26-1 at 200–01 (Ex. Z). In March 2013, Mr. Andregg again recommended that Mr. Higley be terminated. ECF No. 31-2 at 8 (Ex. A). In April 2013, Ms. Yoder sent an email to TDP's HR Director requesting approval for Mr. Higley's termination. ECF Nos. 29 at ¶¶ 105, 107; 26-1 at 255 (Ex. NN). The request was approved on April 5, 2013 and Mr. Higley was terminated at age 68. ECF Nos. 26 at ¶¶ 85–86; 29 at ¶¶ 108–09; 25 at 16; 26-1 at 257 (Ex. OO). Mr.

Higley was replaced by Jonathan Meyers, who is under 40 years old. ECF No. 29 at ¶ 110.

### DISCUSSION

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact is "genuine" where the evidence is such that a reasonable jury could find in favor of the non-moving party. *Id.* The moving party bears the initial burden of showing the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to identify specific facts showing there is a genuine issue of material fact. *Anderson*, 477 U.S. at 256.

In ruling on a motion for summary judgment, the court views the facts, as well as all rational inferences therefrom, in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The court must only consider admissible evidence. *Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002). There must be evidence on which a jury could reasonably find for the plaintiff and a "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

## A. Age Discrimination

The WLAD protects employees age 40 and over from discrimination on the basis of age. RCW §§ 49.44.090, 46.60.180. Under the *McDonnell Douglas* framework, Washington courts use a burden shifting analysis in cases alleging employment discrimination under the WLAD. *Mikkelsen v. Pub. Util. Dist. No. 1 of Kittitas Cty.*, 189 Wash.2d 516, 527 (2017) (citation omitted); *see also McDonnel Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). A plaintiff has the initial burden of proving a prima facie case, which creates a presumption of discrimination. *Scrivener v. Clark Coll.*, 181 Wash.2d 439, 446 (2014).

The burden then shifts to defendant who must present evidence that the plaintiff was terminated for a legitimate and nondiscriminatory reason. *Id.* The plaintiff must then show that the proffered reason is a pretext for discrimination. *Id.* "Evidence is sufficient to overcome summary judgment if it creates a genuine issue of material fact that the employer's articulated reason was a pretext for a discriminatory purpose." *Id.* (citations omitted). The Washington Supreme Court has noted that "[s]ummary judgment for an employer is seldom appropriate in employment discrimination cases because of the difficulty of proving discriminatory motivation." *Mikkelsen*, 189 Wash.2d at 427–28 (citing *Scrivener*, 181 Wash.2d at 445). A plaintiff may overcome summary judgment merely by

showing "that a reasonable jury could find that discrimination was a substantial factor in the employer's adverse employment action." *Id.* (citation omitted).

The Court will apply the foregoing analysis to Mr. Higley's age discrimination claim.

### 1. Prima Facie Case

A plaintiff must show that: (1) he was within the statutorily protected age group; (2) was discharged by defendant; and (3) was doing satisfactory work.[1] *Id.* at 470–71. At the summary judgment stage, a plaintiff's prima facie burden is minimal and "does not even need rise to the level of a preponderance of the evidence." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994).

Here, Defendant contends that Mr. Higley cannot establish that he was doing satisfactory work. ECF No. 25 at 13. The Court finds the other elements of the prima facie case are met, as Mr. Higley was 68 years old when terminated by Defendant. ECF No. 25 at 16. In determining satisfactory work, TPD measures performance standards by meeting or exceeding quota, selling a baseline of new products each month, and recording a target number of KPI's each day. *Id.*; 28 at

---

[1] The final requirement that a plaintiff must prove he was replaced by a person outside his protected group is no longer required to establish a prima facie case of discrimination under the WLAD. *See Mikkelsen*, 189 Wash.2d 528.

6. Defendant emphasizes that Mr. Higley failed to meet TDP's performance standards for several years. ECF No. 25 at 13.

Yet, Plaintiff contends that the question is whether an employee's performance is satisfactory at the time of the termination decision and thus his performance three to four years prior is immaterial. ECF No. 28 at 5; *Griffith v. Schnitzer Steel Indus., Inc.*, 128 Wash. App. 438, 449 n.6 (2005). Defendant disputes Plaintiff's reading of *Griffith* and argues that the case does not support Plaintiff's argument. ECF No. 30 at 2–3. *Griffith* supports Plaintiff's claim that the pertinent timeframe does not include prior years. The court in *Griffith* stated, "The ultimate question for the fact-finder, assuming the employee has met the other elements of a prima facie case, is whether the employee was performing adequately when he was terminated[.]" *Griffith*, 128 Wash. App. at 449 n.6. The court found that "[b]ecause satisfactory performance is viewed in light of all the evidence presented, summary judgment for the employer on this basis will rarely, if ever, be appropriate." *Id.* The Court will thus consider the more recent evidence regarding Mr. Higley's performance as more persuasive.

The first element measured by Defendant is quota. Plaintiff argues that, at the time of his termination, Mr. Higley was exceeding his required quota. ECF No. 28 at 6. While Defendant notes that Mr. Higley's 2012 sales results demonstrated that he was meeting expectations, Defendant emphasizes that

1  meeting this quota in 2012 does not negate the deficiencies in new product and

2  KPIs.  ECF No. 25 at 14.  Defendant asserts that TDP has the right to require that

3  its salespeople satisfy all performance metrics regardless of sales being generated.

4  *Id.*; 30 at 4.  Defendant argues that quota attainment alone is not sufficient to

5  achieve satisfactory job performance.  ECF No. 30 at 4.  The Court does not

6  dispute that all three measurements are required to show satisfactory work and thus

7  considers the other two factors below.

8       The second measurement is new sales and Plaintiff argues that his new

9  products sales were comparable to his team and improving.  Plaintiff asserts that in

10  February 2012, new products, not KPIs, were the main focus of his DAP.  ECF No.

11  28 at 7.  Plaintiff notes that as of February 5, 2013, half of Mr. Higley's team was

12  not meeting the three motors per month requirement and only one out of eight team

13  members had met the three ovens per month requirement.  *Id.* at 8.  Plaintiff

14  contends that there is no evidence that anyone other than Mr. Higley was

15  disciplined for not meeting these company goals.  *Id.*  Plaintiff also emphasizes

16  that three days prior to his termination, Mr. Burns sent a team-wide email showing

17  that Mr. Higley sold eight motors and eleven ovens, which was comparable to the

18  seven individuals on his team.  *Id.*; 27 at 205 (Ex. U).  Yet, Defendant asserts that

19  while Plaintiff's new products sales improved from zero, he was still not meeting

20  the required three motors and ovens per month.  ECF No. 30 at 4.  Defendant

argues that "[s]poradic improvement does not equate to overall success." *Id.*
Defendant rejects Plaintiff's argument regarding other members of his team,
asserting that it is not relevant to Mr. Higley's performance. *Id.*

In regards to the third element of KPIs, Plaintiff contends that many TDP
sales representatives struggled with KPI compliance and were not disciplined.
ECF No. 28 at 9. Plaintiff states that he did not receive any negative feedback
related to KPI compliance for 2011 until his review in May 2012, but all sales
representatives were deficient in KPI performance in 2011. *Id.*; 27 at 133 (Ex. E).
In February 2012, Mr. Higley's KPIs were at the company average of 3.95 calls
per day out of a target of 8. ECF Nos. 28 at 9; 26-1 at 175–76 (Ex. V). Defendant
again rejects the relevance of other sales representatives' deficiencies. ECF No. 30
at 5. Defendant emphasizes that TDP requires all of its outside sales
representatives to complete the same number of KPIs per day and Mr. Higley was
not consistently meeting those standards. *Id.*

The Court finds that Plaintiff is able to establish a prima face case.
Plaintiff's burden is minimal and he provided sufficient evidence to show he met
the expectations for his 2012 sales results, as admitted by Defendant. ECF No. 25
at 13. Mr. Higley also established that his work was likely satisfactory under the
quota and KPI metrics, as his efforts were comparable to other salespeople. The
Court acknowledges Defendant's misgivings about comparing Mr. Higley to other

members of his team, but the Court finds it is instructive to show that Mr. Higley

was meeting or exceeding the standards of those in his area even if he was not

always meeting the nationwide standards set by TDP.  The Court determines that

Plaintiff is able to establish a prima facie case for age discrimination as he met the

minimal burden of showing that his work was satisfactory.  The Court then

proceeds to consider the subsequent components of the burden shifting analysis.

### 2. Legitimate Nondiscriminatory Reasons

The burden now shifts to Defendant to rebut the inference of discrimination

and present evidence that Mr. Higley was terminated for a legitimate,

nondiscriminatory reason.  *See Scrivener*, 181 Wash.2d at 446.  Here, Defendant

contends that even if Mr. Higley is able to establish a prima facie case of

discrimination, the presumption established by that evidence fails in light of TDP's

production of Mr. Higley's well-documented performance deficiencies.  ECF No.

25 at 15.  Defendant emphasizes that these deficiencies spanned several years and

were observed and documented independently by four different supervisors and

Mr. Andregg.  *Id.*

Plaintiff disputes Defendant's nondiscriminatory reasons, arguing that these

reasons for termination are pretextual.  Therefore, for the purposes of the burden

shifting analysis, the Court finds Defendant has satisfied its burden to rebut any

inference of discrimination.  Defendant established legitimate, nondiscriminatory

1    reasons for Mr. Higley's termination, such as the alleged deficiencies in new

2    product sales and KPIs.

3        **3. Pretext**

4        An employee can show that the employer's stated reasons for termination

5    are pretextual and unworthy of belief "with evidence that:  (1) the employer's

6    reasons have no basis in fact; or (2) even if the reasons are based on fact, the

7    employer was not motivated by the reasons; or (3) the reasons are insufficient to

8    motivate the adverse employment decision."  *Chen v. State*, 86 Wash. App. 183,

9    190 (1997).  Pretext may also be demonstrated by evidence showing that an

10   employee was treated differently than similarly situated employees.  *Vasquez v.*

11   *Cty. of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003).  Circumstantial or

12   inferential evidence may be sufficient to establish pretextual motive, *Mikkelsen*,

13   189 Wash.2d at 526, however, an employee's subjective belief about his

14   performance is not relevant, *Aragon v. Republic Silver State Disposal Inc.*, 292

15   F.3d 654, 660 (9th Cir. 2002) (citing *Bradley v. Harcourt, Brace & Co.*, 104 F.3d

16   267, 270 (9th Cir. 1996)).  If there is no evidence of pretext the defendant is

17   entitled to dismissal as a matter of law, but if there is evidence of pretext then the

18   case must go to the jury.  *See Kastanis v. Educ. Employees Credit Union*, 122

19   Wash.2d 483, 490 (1993).

20

Here, Defendant asserts that Mr. Higley's termination was the direct result

of his job performance and he cannot establish pretext. ECF No. 25 at 16.

Defendant contends its reasoning is not pretextual under the "same actor" theory.

*Id.* "When an employee is both promoted and fired by the same decisionmakers

*within a relatively short period of time*, there is a strong inference that he or she

was not fired due to any attribute the decisionmakers were aware of at the time of

the promotion." *Griffith*, 128 Wash. App. at 453 (emphasis added). Plaintiff

argues that this theory does not apply here because Defendant is unable to establish

a relatively short period of time between the promotion and termination. ECF No.

28 at 12. Mr. Higley was last promoted in 2007 and was terminated in 2013. ECF

Nos. 26 at ¶¶ 3, 85–86; 29 at ¶¶ 7, 108–09. Yet, Defendant contends that this time

period does not negate the defense. ECF No. 30 at 7.

In *Griffith*, there was a lapse of five years between the promotion and firing,

which the court found not significant. *Griffith*, 128 Wash. App. at 454 (from age

52 to age 57). While the court determined that a short period of time was not an

essential element, it also noted that "[o]ver the years, an individual may develop an

animus towards a class of people that did not exist when the hiring decision was

made." *Id.* (quoting *Buhrmaster v. Overnite Transp. Co.*¸ 61 F.3d 461, 464 (6th

Cir. 1995)). Time can weaken this defense and the Court finds here that a period

of nearly six years, from age 63 to age 68, can sufficiently weaken the same actor

theory. Six years is an extended period of time where it is possible that although

the employer may not have had anything against the protected class *per se* when

hiring the member, this does not mean that the employer had nothing against the

class when firing him. *See id.* (quoting *Buhrmaster*, 61 F.3d at 464).

Defendant also argues that Mr. Higley's age played no part in his

employment at TDP. ECF No. 25 at 16. Defendant asserts that TDP hired Mr.

Higely at age 58, promoted him at 63, and provided him with multiple

opportunities to correct his performance deficiencies before his termination at age

68. *Id.* Defendant states that the standards applied to Mr. Higley were the same

standards that applied to all of TDP's outside sales representatives. *Id.* Defendant

emphasizes that TDP gave Mr. Higley a year to improve his performance, sent him

to additional training, provided him a list of contacts for potential sales,

encouraged him to contact another representative that had a solid new products

pipeline, and gave him continued feedback on his performance. *Id.* at 17.

Plaintiff responds that Defendant's proffered reason for termination applied

to other individuals for which TDP made a different decision. ECF No. 28 at 12;

*see Vasquez*, 349 F.3d at 641 (9th Cir. 2003). Plaintiff asserts that Mr. Burns, who

held the same position of Executive Outside Territory Manager in late March 2012,

had an inferior performance to Mr. Higley in quota attainment. ECF No. 28 at 13.

Mr. Burns was ranked below Mr. Higley in new products sold, but he was

promoted in April 2012 to Regional Sales Manager at age 33. *Id.* Plaintiff

emphasizes that Mr. Burns never received a verbal warning, written warning, or

DAP for his inferior performance. *Id.* Mr. Burns was promoted by Mr. Andregg,

but Mr. Higley was disciplined by Mr. Andregg. *Id.* Additionally, Plaintiff notes

that just before his termination, Mr. Higley was performing similarly to those in his

region in new product sales and that no one else on his team demonstrated the

same improvement. *Id.* at 14.

Defendant asserts that Mr. Burns met or exceeded TDP's expectations each

year between 2007 and 2010, and engaged in activities to put himself on track for

promotion such as electing to participate in the emerging leaders program,

engaging in mentoring activities, and helping new hires. ECF Nos. 30 at 8; 31-1 at

60 (Ex. D). Defendant concedes that Mr. Burns' performance dipped in 2011 and

early 2012, but this was due to a family matter and cannot be used to infer

discriminatory intent with respect to Mr. Higley. ECF Nos. 30 at 8; 30-1 at 64–65.

The Court acknowledges that Mr. Burns' situation is not comparable because his

low numbers in the specific timeframe were due to a family tragedy.[2] Defendant

---

[2] Plaintiff moves to strike Mr. Andregg's testimony (ECF No. 31-2) relating

to his decision to promote Mr. Burns. ECF No. 35. Plaintiff argues that Mr.

Andregg failed to disclose Mr. Burns had extenuating circumstances affecting his

also notes that a similarly situated sales representative, Scott Hoover who was then

29 years old, exceeded his quota but was deficient in new product sales and KPIs.

ECF No. 30 at 7.  Mr. Hoover was warned of his deficient performance and then

terminated the following month.[3]  *Id.*

---

performance leading up to his promotion.  *Id.* at 5.  Defendant asserts it is

responding to Plaintiff's argument that Mr. Higley and Mr. Burns were similarly

situated employees.  ECF No. 51 at 5.  The Court notes that Plaintiff was aware of

Mr. Burns' testimony regarding his family tragedy.  ECF No. 31-1 at 4.  Plaintiff

also had the opportunity to question Mr. Andregg as to why he promoted Mr.

Burns in spite of his deficient performance.  The Court finds that Defendant did not

unfairly wait to present this evidence after the close of discovery, as Plaintiff was

aware of Mr. Burns' deficient performance and the reason for this deficiency.

Accordingly, the Court denies Plaintiff's Motion to Strike.  ECF No. 35.

[3]      Plaintiff moves to strike the Declaration of Audra Braden (ECF No. 31-4)

and other information regarding Scott Hoover as a comparator.  ECF No. 35.

Defendant uses this evidence to refute Plaintiff's claim that no one but Mr. Higley

was placed on DAP.  ECF No. 51 at 2.  Yet, Plaintiff asserts that the time period

for when no one but Mr. Higley was placed on DAP is different than the time

period regarding Mr. Hoover, and thus the information is irrelevant.  ECF No. 59

1    Additionally, Plaintiff argues that Mr. Higley's age was a substantial

2    motivating factor in his termination, satisfying his burden to demonstrate pretext.

3    ECF No. 28 at 14.  Plaintiff asserts that he need not establish animus to prevail on

4    summary judgment.  *Id.* at 14–15.  Plaintiff states that Mr. Andregg was hesitant to

5    hire Mr. Higley because of his age, which "ultimately manifested into a campaign

6    to terminate Mr. Higley regardless of Mr. Higley's performance."  ECF No. 28 at

7    15.  Plaintiff asserts that Mr. Andregg and Mr. Burns made age-related comments

8    to Mr. Higley, such as why he was still working when he collected social security.

9    ECF Nos. 28 at 15; 26-1 at 52, 54.  Defendant asserts that these comments were

10   never made and, even if they were, the statements do not establish pretext.  ECF

11   _____

12   at 3.  Plaintiff also argues that Mr. Hoover was not available to him during

13   discovery.  Plaintiff notes that while Mr. Hoover was listed as an employee

14   terminated by reason of "involuntary for cause," it was unclear to Plaintiff what

15   this term meant.  *Id.* at 4.  The Court finds that including evidence of Mr. Hoover

16   still does not negate a material question of fact regarding pretext for discrimination

17   when there is no evidence concerning how Mr. Hoover is a similarly situated

18   employee, such as his region or title as compared to Mr. Higley.  Accordingly,

19   Plaintiff's Motion to Strike (ECF No. 35) is denied as moot.

20

Nos. 25 at 17–18; 30 at 8.  The Court does not consider these disputed statements

for purposes of this decision.

The Court is mindful that under Washington law, summary judgment in

favor of the employer is "seldom appropriate" due to the difficulty of proving

discriminatory motivation.  *Mikkelsen*, 189 Wash.2d 527-28 (citing *Scrivener*, 181

Wash.2d at 445).  The Court finds that Plaintiff has established evidence of pretext.

Mr. Higley provided evidence that he was performing similarly to those in his

region in new product sales, and Defendant's example of a possible similarly

situated individual who was terminated is not sufficient to overcome Plaintiff's

evidence.  ECF Nos. 28 at 14; 29 at ¶ 104; 27 at 205 (Ex. U).  While Mr. Higley

demonstrated improvement in February 2013, other members of his team who did

not demonstrate the same improvement were not subject to discipline or

termination.  ECF Nos. 28 at 14.

The Court finds that Plaintiff meets the low bar to establish evidence of

pretext, as there is a reasonable inference of discrimination.  The Court finds that

Mr. Burns' emails are persuasive in showing pretext.  In December 2012, Mr.

Andregg told Mr. Burns, "Remember you need to create and document the paper

trail.  You've done a good job with him.  Now it's time to ramp it up on him.

Enough is enough."  ECF No. 27 at 191 (Ex. P).  This evidence establishes a

reasonable question of material fact that TDP's reasoning is pretextual for

1 discrimination considering the performance of other similarly situated sales

2 representatives.  As Plaintiff establishes his prima facie case and rebuts TDP's

3 nondiscriminatory reasoning for termination as pretextual, the Court determines

4 that a reasonable jury could find discrimination was a substantial factor in Mr.

5 Higley's termination.

6       Accordingly, the Court denies Defendant's request to dismiss Plaintiff's age

7 discrimination claim.

8 **ACCORDINGLY, IT IS HEREBY ORDERED:**

9      1. Defendant's Motion for Summary Judgment (ECF No. 25) is **DENIED**.

10      2. Plaintiff's Motion to Strike & Notice of Intent to Dismiss Disability

11        Discrimination Claim (ECF No. 35) is **DENIED in part**.  Plaintiff's

12        Notice of Intent to Dismiss Disability Discrimination Claims is

13        acknowledged and requires no ruling.  Plaintiff's Motion to Strike is

14        **DENIED**.

15      3. Plaintiff's Motion to Expedite (ECF No. 37) is **DENIED** as moot.

16      The District Court Executive is directed to enter this Order and furnish

17 copies to counsel.

18      **DATED** February 4, 2018.

19



20                      THOMAS O. RICE
               Chief United States District Judge